UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHANE TRACEY, | Case No.: 2:09-cv-01257-GMN-PAL |
| Plaintiff, | **ORDER** |
| vs. | **(Re: ECF #55)** |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY; DOES I through XX; AND ROE CORPORATIONS I through XX, inclusive, | |
| Defendant. | |

## **INTRODUCTION**

Before the Court is Defendant American Family Mutual Insurance Co.'s Motion for Summary Judgment or in the alternative Motion to Bifurcate Trial (ECF No. 55) pursuant to Fed.R.Civ.P. 42(b). Plaintiff filed a timely Response to Defendant's Motion for Summary Judgment (ECF No. 58) and Defendant timely filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 63).

Based on the following reasons, this Court DENIES both Defendant's Motion for Summary Judgment (ECF No. 55) and Defendant's Motion to Bifurcate Trial (ECF No. 55).

## **FACTS AND PROCEDURAL HISTORY**

This is a breach of contract claim filed regarding Defendant's failure and refusal to pay a policy limit under Plaintiff's Uninsured/Underinsured Motorist coverage ("UIM"). Plaintiff, Shane Tracey, was involved in a motor vehicle accident on September 16, 2007. (Complaint ¶ 8 pg. 3, ECF No. 65). On that date, Plaintiff was traveling northbound on Decatur Blvd., in Las Vegas, Nevada, when another driver, Lisa Robinson, attempted to

make a U-turn and struck Plaintiff's vehicle. (*Id.*)  As a result of the impact, Plaintiff's vehicle rolled several times and came to rest upside down on the roadway. (*Id.*)

The tortfeasor, Lisa Robinson, had a policy of insurance which provided only $15,000 in liability coverage per person. (*Id.* at ¶ 10 pg. 4). This amount was paid to Plaintiff by Ms. Robinson's insurance carrier. (*Id.*)  Plaintiff also had a policy of insurance through Defendant, American Family Mutual Insurance Company ("American Family"), which provided Uninsured/Underinsured Motorist coverage in the amount of $50,000 per person and Medical Payments Coverage, in the amount of $5,000. (*Id.* at ¶ 11 pg. 4, Plaintiff's Response pg.2, ECF No. 58).  American Family has paid the $5,000 in Medical Payments Coverage to Plaintiff's medical care providers.  (Plaintiff's Response pg.2, ECF No. 58).  Plaintiff provided American Family with documentation of medical specials exceeding $57,000 and documentation of a need for spinal surgery which will cost in excess of $100,000.  (Complaint ¶ 35 pg. 9, ECF No. 65).

Defendant has failed and refused to pay the UIM Coverage to Plaintiff and disputes the value of payment owed to Plaintiff under the policy. (Mtn. for SJ pg. 3 ECF No. 55).  Defendant claims that the mid-back treatment Plaintiff received after September 2006 was unrelated to the accident underlying this suit and that the Plaintiff was receiving treatment for similar symptoms one month before this loss. (*Id.* pg. 2-3). Therefore, Defendant offered Plaintiff $3,000 to settle his UIM claim based on the un-relatedness of his additional treatment.  (Complaint ¶ 34 pg. 9, ECF No. 65).

Plaintiff brought this suit on May 19, 2009 in the Eighth Judicial District Court for the State of Nevada. (Complaint, ECF No. 65).  It was properly removed to this Court on July 13, 2009. (ECF No. 1).  Plaintiff alleges breach of contract, common law bad faith, and statutory bad faith on the part of Defendant for failure to pay the policy limit. (Complaint, ECF No. 65).  In response, Defendant filed the instant motion for Summary

Judgment or in the alternative to bifurcate trial (ECF No. 55), regarding the extra-contractual causes of action of common law bad faith and statutory bad faith.

## DISCUSSION

### I. Motion for Summary Judgment

#### A. Rule 56 Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Id.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored

procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

B.   Analysis

A claim of breach of the covenant of good faith and fair dealing is, in essence, a claim for bad faith. Insurers have a special relationship with its insureds that arise under the implied covenant of good faith and fair dealing. *Allstate Insurance Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). This duty does not arise out of contract, but rather the covenant is imposed on insurers by the law. *U.S. Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070 (1975). "A violation of the covenant gives rise to a bad-faith tort claim." *Miller*, 212 P.3d at 324. Bad faith is "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Id.* (quoting *Am. Excess Ins. Co. v. MGM*, 102 Nev. 601, 605, 729 P2d 1352 (1986)). In contrast, the Nevada insurance regulations, codified in NRS 686A.310, address the manner in which an insurer handles an insured's claim whether or not the claim is denied. *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1095 (D. Nev. 2006). NRS 686A.310 and bad faith are not identical causes of action. *Id.* In order to establish a claim for bad faith in the present context, the plaintiff must necessarily establish that (1) there is a denial of their claim, (2) that the denial was unreasonable, and (3) the insurer knew it lacked reasonable basis to deny the claim or acted with reckless disregard as to the unreasonableness of the denial. *See Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp.2d 1090, 1096 (D. Nev. 2006); *Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789, 794, 858 P.2d 380 (1993) ("[a]n insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."); *Peterson*, 91 Nev. at 620. The Ninth Circuit has held that a bad faith claim should be dismissed on summary judgment "if the defendant demonstrates that there was a genuine dispute as to coverage." *Feldman v. Allstate Ins.*

*Co.*, 322 F.3D 660 (9th Cir. 2003). This is known as the "general dispute doctrine." The genuine dispute may concern a factual dispute or unsettled areas of insurance law. *Id.* "[T]he genuine dispute doctrine should be applied on a case-by case basis." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 994 (9th Cir. 2001).

"The key to a bad faith claim is whether or not denial of the coverage was reasonable." *Id.* at 992. Under Nevada law a claim for bad faith may be dismissed if the insurer had a reasonable basis to deny coverage. *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1242 (D. Nev. 1994). The Defendant argues that the genuine dispute doctrine relieves Defendant from Plaintiff's bad faith claims when the Defendant believes that the injury is unrelated to the loss or the treatment is unreasonable. Although there may legitimately be a dispute over whether the injury is unrelated to the loss or treatment was unreasonable, there still exist material facts that may lead a jury to conclude that Defendant's assertions are unreasonable because it failed to investigate the claim properly. The Defendant is making a factual assertion that the injury was either unrelated to the loss or the treatment was unreasonable. However, if the Defendant did not reasonably investigate the claim before making this assertion, then the genuine dispute is not in fact genuine. *See Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723, 171 P.3d 1082, 1089 (2007)[1] (Where an insurer denies a claim based on a factual assertion without first investigating, there is a triable issue of fact as to whether the factual assertion had a reasonable basis). "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process, and evaluate the insured's claim." *Id.* "A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Id.*

---

[1] Although a Supreme Court of California case, Nevada often looks to this jurisdiction for guidance.

1   In this case, there are a number of material issues that may lead a jury to conclude
2  that American Family was unreasonable in investigating the claim.  American Family did
3  not request an Independent Medical Examination during its evaluation and investigation
4  of the claim.  Instead American Family relied not upon an expert, but upon a nurse,
5  Nancy Chavez, to evaluate the Plaintiff's medical records.  Furthermore, when making
6  her evaluation Nurse Chavez did not have prior treatment notes of Dr. Roach or the
7  discography records from Dr. McKenna and she did not have Dr. Kabins' or Dr. Thomas
8  Dunn's surgical recommendation report. (See Deposition of Chavez, pg.  34, 42, 52 and
9  66).  A reasonable trier of fact may conclude that American Family was unreasonable in
10 its investigation by not having the IME performed or by having a nurse conduct the
11 evaluation of Plaintiff's medical treatment without all the relevant records.
12  Defendant argues that the vast majority of Plaintiff's medical specials are for
13 treatment for his mid-back which Defendant believes was pre-existing and/or unrelated to
14 the loss.  However, Defendant's belief stems from Dr. Duke's expert report which was
15 created *after* this lawsuit was introduced.  Defendant also notes additional factors: that
16 Plaintiff did not report his mid-back pain on the date of the loss, that Plaintiff has a
17 history of documented mid-back pain dating to at least 2003, and that Plaintiff had a
18 severe collision in April 2006 resulting in similar symptoms.  While Plaintiff's history of
19 mid-back pain and previous symptoms may have given Defendant a basis to question and
20 investigate the claim, the fact that the Defendant sought an expert opinion *after* litigation
21 arose may convince a jury to determine that Defendant was indeed unreasonable in its
22 initial investigation of Plaintiff's claim.  Furthermore, Plaintiff raises issues concerning
23 Nurse Chavez's recommendations to Defendant to obtain some missing records.
24 However, Defendant argues that it was Plaintiff's fault that Defendant did not have the
25 proper records.  This disputed issue has relevance as to whether or not the Defendant was

reasonable in its investigation. If it indeed was Defendant's fault that the records were not reviewed, then a reasonably trier of fact may conclude that Defendant should have obtained the missing records pursuant to Nurse Chavez's recommendation. Accordingly, it seems that Plaintiff has raised a number of issues that could persuade a trier of fact to conclude that Defendant's investigation was unreasonable, and that therefore Defendant's mere factual assertion that the injury was pre-existing and/or unrelated to the loss was in fact not genuine, but reckless.

Plaintiff has also alleged a cause of action for statutory violation of NRS 686A.310. Neither party fully briefed this issue in the summary judgment pleadings. Summary judgment cannot be rendered *sua sponte* on an issue unless the parties have been put on adequate notice by the court to come forward with evidence on an issue. *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548; *Fountain v. Filson,* 336 U.S. 681, 682-83, 69 S.Ct. 754, 93 L.Ed. 971 (1949). As the issue has not been raised, argued or briefed by the parties, it is inappropriate for the court to rule on this issue at this time.

## II.     Bifurcate Trials

### A.     Rule 42(b) Legal Standard

Federal Rule of Civil Procedure 42(b) states in relevant part:

> [f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The decision to bifurcate is committed to the sound discretion of the trial court. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). Bifurcation is appropriate when it simplifies the issues for the jury and avoids the danger of unnecessary jury confusion. *Id.* Bifurcation is particularly appropriate when resolution of a single claim or issue could be

dispositive of the entire case. *See O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494, 501 (5th Cir.1985). (Bifurcation was proper when resolution of breach of insurance contract claim effectively disposed of plaintiff's bad faith claim against insurance company).

**B.     Analysis**

Defendant argues that Nevada and Federal law favor bifurcation of breach of contract and bad faith causes of action against insurers. Defendant cites to *Pulley v. Preferred Risk Mut. Ins. Co.*, for the proposition that a bad faith claim cannot arise until there is a judgment in the breach of contract claim. 11 Nev. 856, 897 P.2d 1101 (1995). *See* Motion to Dismiss ECF No. 55. However, Defendant's reliance on *Pulley* for this proposition is misplaced. In *Pulley*, the parties were not able to agree on the value of the insured's uninsured motorist claim so the insured filed a breach of contract action against the insurer to recover policy benefits. The parties thereafter agreed to arbitrate the policy claim and the arbitrator returned an award in favor of the insured. The insurer failed to pay the arbitration award and the insured then commenced a bad faith action against the insurer. The insurer then paid the award and moved to dismiss the bad faith suit on the grounds that the bad faith claim could have been raised in the insured's first action and was therefore barred by the doctrine of *res judicata*. The district court agreed and dismissed the bad faith suit. The Supreme Court reversed and stated:

> We conclude that the doctrine of res judicata does not bar appellants' case against Preferred Risk for breach of the covenant of good faith and fair dealing because the issue decided on the merits in the prior litigation is not the same issue that is presented in the second case. The duty to act in good faith does not arise from the terms of the insurance contract. *United States Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070, 1071 (1975). Rather, the duty of good faith and fair dealing is imposed by law and the violation of this duty is a tort. *Id.*

*Id.* at 858-859.  Relying on this passage the Defendant incorrectly cites *Pulley* as holding that the "bad faith tort action *does not* occur until after the first case for benefits under the contract had been settled."  *Id*. at 859, 1103 *emphasis added*.  However, the above quoted language properly cited reads: "bad faith tort action *did not* occur until after the first case for benefits under the contract had been settled." *Id. emphasis added*.   Defendant tries to argue that *Pulley* stands for the proposition that a bad faith tort action cannot arise until after the breach of contract claim is settled.  But that is not what was found in that case.  In *Pulley*, the bad faith tort did not arise until *after* the breach of contract claim was settled.  Therefore, it would have been impossible for the Plaintiff in that case to bring a bad faith claim during the first trial because no bad faith had yet occurred.  In the instant suit, however, the Plaintiff is arguing that the Defendant was acting in bad faith when it handled and denied its UIM claim.

In reliance on *Martin*, the Defendant quotes:

> A review of other jurisdictions' case law involving UM coverage and bad faith claims reveals that a majority of jurisdictions hold that a bad faith claim either does not exist or should be held in abeyance until there is a final resolution of the contractual coverage claim. *See, e.g., Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla.1991)*, (Florida Supreme Court, addressing a split in the district courts, held that a bad faith claim does not accrue before the conclusion of the underlying litigation for contractual UM benefits); *National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982)*, (finding that to make out a prima facie case of bad faith, the evidence must show that the Plaintiff is entitled to a directed verdict on the contract claim, and therefore is entitled to recover on the contract claim as a matter of law); *Lexington Ins. Co. v. Royal Ins. Co. of Am., 886 F.Supp. 837, 841-42 (N.D.Fla.1995)*, (holding a bad faith claim for failure to settle a claim does not arise until there is a final determination of the insurer's liability, claimant's damages and resolution of any appeals).

*Id.* at 236.  Defendants may have incorrectly quoted *Pulley* in reliance on *Martin v. State Farm Mu. Auto. Ins. Co.*, when that Court stated:

> while the Nevada Supreme Court has not directly addressed the issue, it has held that bad faith claims are separate and distinct causes of action, and that "the transaction giving rise to [a] bad faith tort action [does] not occur until after the first case for benefits under the contract [has] been settled." *Pulley*, 897 P.2d at 1103.

960 F.Supp. 233, 237 (D. Nev. 1997).  However, in reviewing a bad faith claim made in conjunction with a breach of insurance contract claim, the Court in *Drennan v. Maryland Cas. Co.*, declined to follow the *Martin* holding.  366 F.Supp.2d 1002 (D. Nev. 2005).  ("To thereafter substitute the verb 'does' for 'did' in the passages alters its meaning from a statement of operative fact to a rule of law." *Id.*).  Thus, the Court in *Drennen* found "that Nevada law does not require Plaintiffs to establish tortfeasor liability or the extent of damages as a matter of law prior to instituting a claim for bad faith.  To find otherwise would require Plaintiffs to commence two separate suits even if the facts establish that [the insurer] breached the insurance contract and acted in bad faith within the same factual sequence." *Id.*  The facts of *Drennen*, where a bad faith claim arose out of the same factual sequence as the breach of contract claim, are of an identical nature to the facts in the instant suit.  Therefore, this Court recognizes that in cases such as this one, Nevada law does not require a breach of contract claim be brought to judgment before a bad faith claim can arise.

This holding by the above stated cases standing for the proposition that a breach of contract claim and a bad faith claim can arise concurrently, and do not have to be separately litigated, does not mean that the issues of breach of contract claim and a bad faith claim cannot be bifurcated for trial.  Upon finding that the Defendants lacked an

1  argument to dismiss the Plaintiffs' bad faith claim, the court in *Drennen*, went on to find
2  that bifurcating the breach of contract claim from the bad faith claim was appropriate.  In
3  doing so, the court determined that under the circumstances of that case, bifurcation
4  would further the interest of expedient resolution of litigation, would simplify the issues
5  for trial and reduce the possibility of undue prejudice by allowing the jury to hear
6  evidence of bad faith only when appropriate because if Plaintiffs did not prevail on the
7  issue of breach, there could be no basis for concluding that Defendant acted in bad faith.
8  *See id.* at 1008. In other words, if the causes of action were bifurcated, the verdict in the
9  first (breach of contract) trial could resolve and dispose of the need for a second (bad
10 faith) trial.  However, in the instant case, Plaintiff argues that the resolution of the
11 breach of contract issue would not be dispositive of the claim for breach of the covenant
12 of good faith and fair dealing.   It is within this Court's discretion to determine if
13 bifurcation is appropriate in the instant case.
14     In order to determine if bifurcation is appropriate this Court must examine the
15 factors listed in Fed. R. Civ. P.  42(b): (1) for convenience, (2) to avoid prejudice, or
16 (3) to expedite and economize.  Plaintiff argues that bifurcation is inappropriate because
17 the resolution of the breach of contract claim is not dispositive of the entire case.
18 Plaintiff argues that in the instant suit a finding that Defendant did not breach the
19 contract does not automatically dismiss the bad faith claim.  Relying on the Nevada
20 Supreme Court case *Hilton Hotels v. Butch Lewis Productions*, Plaintiff argues that even
21 if there is no breach of contract, a party "may still be able to recover damages for breach
22 of the implied covenant of good faith and fair dealing that is part of every contract." 107
23 Nev. 226, 808 P.2d 919 (1991).
24     Based on this Court's finding above regarding summary judgment, it agrees with
25 Plaintiff.  In this instant case, whether or not Defendant was reasonable in conducting its

investigation of Plaintiff's claim is the key to whether or not Defendant acted in bad faith. Even if the jury finds that in fact the accident was not the proximate cause of Plaintiff's injury or treatment was unreasonable resulting in a verdict that there was no breach of contract, the jury could still find that Defendant acted in bad faith in refusing the claim because it failed to make a reasonable investigation into the Plaintiff's UIM claim before making its factual assertion that the injury was unrelated to the loss or treatment was unreasonable. Therefore, Plaintiff could recover damages for breach of the implied covenant of good faith and fair dealing even if it fails to recover for the breach of contract claim.

Consequently, Plaintiff argues that bifurcation does not lessen the cost of litigation because Plaintiff is not precluded from continuing his bad faith action against Defendant. Plaintiff argues that two trials would in fact increase litigation costs because it would force the Plaintiff to pay expert witness fees twice (once for each trial)[2]. Defendant does not request two separate trials, but only requests that the extra-contractual claims be litigated after the breach of contract claim, in two separate phases of the same trial. Plaintiff argues that the contractual claim and the bad faith claims are inextricably intertwined. *See Verner v. Nevada Power Co.*, 101 Nev. 551, 706 P.2d 147 (1985) (the bifurcation of trials allowed only a limited medical testimony that resulted in a cursory, almost cryptic, presentation of the plaintiff's injuries). Plaintiff proffers that pursuant to *Verner*, the party moving for bifurcation "must demonstrate that a bifurcated trial is clearly necessary to lessen costs and expedite the litigation." *Id.* at 554, 150. In support, Plaintiff contends that pursuing the contract claim first then pursuing the bad faith claims second would result in duplicated work, duplicated testimony, and would require the

---

[2] Plaintiff argues that he will have to pay expert witness fees twice; however, Plaintiff has not designated any experts. Plaintiff has however indicated that he may need to call Dr. Mark Kabins twice, indicating that the Plaintiff must mean that he will have to pay treating physicians twice for being witnesses.

Plaintiff to pay the expert fees for each appearance at trial, resulting in a substantial increase in cost to Plaintiff, amounting to a waste of judicial resources.

Defendant counters Plaintiff's arguments by claiming that bifurcation would simplify the issues for trial and reduce the possibility of undue prejudice by allowing the jury to hear evidence of bad faith.  First, Defendant explains that the extra-contractual claims have no relevance to the issue of the existence of a contract, i.e., whether the Plaintiff causally sustained injury and whether his treatment was related for his breach of contract claim.  Second, Defendant is concerned that the jury would be unduly prejudiced by hearing evidence of bad faith in conjunction with the contractual claims and would confuse the different claims.

However, Defendant admits that in this particular case, the terms of the UIM policy are not in issue and that there is not even any dispute as to whether the loss would have been covered. (Defendant's Reply, ECF # 63, page 2, ll. 24-27). The only factual dispute relates to the cause of the injuries and the adjuster's conduct in concluding that they were not caused by this accident.  This case is relatively simple and the facts related to the alleged breach of contract and bad faith claims are inextricably intertwined.  While bifurcation may prevent confusion of issues for the jury, this is often always the case in any trial involving more than one causes of action.  Both jury instructions (including limiting instructions) and the parties opening and closing arguments can address and remedy any confusion.  The concerns regarding judicial economy and expediency cut against bifurcation.  Even if Defendant prevails on the contractual claim, the bad faith claims, including the claim under the Nevada Unfair Claims Practices Act, will not be resolved, will still need to be litigated and the parties will still need to recall essentially the same witnesses resulting in extended trial time and costs associated with litigation.  In taking all the above factors into consideration the court finds that bifurcation is not

appropriate under the limited facts & circumstances presented in this particular case.

## **CONCLUSION**

The Court hereby DENIES both Defendant's Motion for Summary Judgment on extra-contractual claims and Defendant's Motion to Bifurcate trial.

DATED this  8th   day of September, 2010.

_____
Gloria M. Navarro
United States District Judge