UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHANE TRACEY, ) | Case No.: 2:09-CV-1257-GMN-PAL |
| ) | |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| ) | |
| AMERICAN FAMILY MUTUAL ) | |
| INSURANCE COMPANY; DOES I ) | |
| through XX; and ROE CORPORATIONS ) | |
| I through XX, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

Before the Court is Defendant, American Family Mutual Insurance Co.'s Motion In Limine to exclude evidence of Plaintiff's thoracic discogram and to exclude opinion testimony of Plaintiff's treating physicians relating to his purported disc injury (ECF No. 106). Plaintiff has filed a Response to both motions (ECF No. 105).

IT IS HEREBY ORDERED that Defendant's Motion In Limine is DENIED.

## FACTS AND BACKGROUND

This case arises from an accident in which Plaintiff, Shane Tracey, was hit by another vehicle and suffered an injury. Following the accident Plaintiff underwent a surgery performed by Dr. Mark Kabins to relieve Plaintiff's back pain. The cause of Plaintiff's back pain is in dispute by Defendant. Defendant contends that the resulting surgery is not covered by Plaintiff's UIM policy because the back injury was not caused by the accident in question.

Defendant contends that Plaintiff's surgery was predicated on a procedure called a

'discogram' or 'discography' which the defense claims is a controversial exercise which purports to diagnose disc disease or disc injury.  According to Defendant, the process of discography involves the injection of contrast material into intervertebral discs, pressurizing a needle within the disc, and asking the patient if it hurts.  Discography has been performed on the lumbar spine (lower back) for decades and, while it remains a highly controversial procedure, it has been widely studied, tested and debated such that it qualifies as an admissible scientific procedure. Defendant explains that discography performed on the thoracic spine is a recent development in medicine, and is considered an 'emerging' test.  Claiming that both the testing for and the diagnosis of thoracic disc injury rests upon fatally defective foundation, Defendant moves to exclude any testimony about the procedure or opinion based upon Plaintiff's thoracic discography pursuant to *Daubert v Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592 (1993).

   Defendant cites to the International Spine Intervention Society (ISIS), a medical society which provides guidelines to pain management physicians.  According to the ISIS thoracic discography has not been tested for its efficacy or reliability, and has not achieved general acceptance:

> … However, no studies have demonstrated the prevalence of thoracic discogenic pain. The literature is limited to one publication that described a technique for thoracic discography.
>
> * * *
>
> Because thoracic discography has been insufficiently studied and reported in the literature, there are no data on its validity and utility. At this stage of its evolution in clinical practice it is a presumptive procedure. The present recommendations, therefore, are limited to its technical aspects. No recommendations based upon published evidence are possible as to its appropriate or optimal application in clinical practice.

*Spinal Diagnostic Treatment & Procedures, International Spine Intervention Society*, copyright 2004.

Defendant also cites to a 2008 article that contained a systematic review of thoracic discography in the journal *Pain Physician.* The abstract of that article provided:

> Even though the prevalence of thoracic pain has been reported to be 15% of the general population and up to 22% of the population in interventional pain management settings, **the role of thoracic discs as a cause of chronic thoracic and extra thoracic pain has not been well researched.** The intervertebral discs, zygapophysial or facet joints, and other structures including the costovertebral and costotranverse joints have been identified as a source of thoracic pain.
>
> \*\*\*
>
> **Based on the available evidence for this systematic review, thoracic provocation discography is provided with a weak recommendation for the diagnosis of discogenic pain in the thoracic spine**, if conservative treatment has failed.

*Singh, V., et. al., Pain Physician*, September-October 2008, Volume V, pp. 631-42 (emphasis added).

Based on the above, Defendant contends that no studies of any kind, peer-reviewed or otherwise, have documented the supposed prevalence of disc injury in the mid-back or thoracic spine. Furthermore, Defendant alleges that no peer-reviewed research supports thoracic discography as a diagnostic tool and that doctors are cautioned that no such evidence exists. Defendant's motion in limine requests an order prohibiting the Plaintiff from presenting evidence of thoracic discography and excluding evidence of thoracic disc disease purportedly diagnosed by discogram, evidence of surgery and any and all other treatments predicated on thoracic discography.

/ / /

# DISCUSSION

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1109 (9th Ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

It is settled law that in limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of

foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. In 1993, the Supreme Court interpreted this rule and established the current standards for admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Prior to *Daubert*, the federal courts had applied the "general acceptance" standard of *Frye v. United States*. 293 F. 1013, 1014 (D.C. 1923). In *Daubert*, the Supreme Court held that the Federal Rules of Evidence had superseded the *Frye* rule. *See Daubert*, 509 U.S. at 587. General acceptance is no longer required, although it is relevant. The Court must ensure that specialized evidence is relevant and reliable. *Id.* at 589.

> Faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592–93 (footnote omitted). Under the *Daubert* line of cases, a judge has discretion under Rule 702 as a "gatekeeper to decide what evidence is relevant, reliable, and helpful

to the trier of fact." *Desrosiers v. Flight Int'l of Fla., Inc.*, 156 F.3d 952, 961 (9th Cir. 1998). It is a "flexible" test. *Id.*

In their gate-keeping role, district court judges are to consider four nonexclusive factors to determine if the expert opinion is developed by the scientific method. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998).

> District court judges are to consider not only (1) whether the method has gained general acceptance in the relevant scientific community, but also (2) whether the method has been peer-reviewed, (3) whether the method "can be (and has been) tested," and (4) whether there is a "known or potential rate of error."

*Cabrera*, 134 F.3d at 1420 citing *Daubert*, 509 U.S. at 594.

Defendant argues that the opinions of Plaintiff's treating physicians, Drs. Kabins and Dunn are based upon nothing but the Plaintiff's own subjective reports of increased pain after the motor vehicle accident and that they did not undertake any differential diagnosis to eliminate other possible causes of Plaintiff's pain.

Plaintiff argues that thoracic discograms are rare but are reliable and scientifically valid. Plaintiff cites to a 1994 article authored by Kurt Schellhas, M.D., and others that, "Thoracic discography has been described previously as highly useful in the investigation of thoracic, chest, and upper abdominal pain associated with thoracic disc herniation." *Spine*, Volume 19, Number 18, pp. 2103-2109 (1994). This article indicates that discography is the only way to test degenerative thoracic disc abnormalities seen on MR imaging studies. Another article cited was published in the journal entitled *Pain Physician,* an article written by the same doctor the Defendant references. In this earlier article, Dr. Vijay Singh stated that thoracic discography identifies and confirms a thoracic disc as a pain generator, that it is a safe procedure and provides a more complete description of thoracic disc pathology correlated with MRI or CT findings. Vijay Singh,

M.D., *Pain Physician*, 2004:7:451-458, ISSN 1533-3159.  Based on the excerpts of Dr. Singh's article it appears this procedure is used in conjunction with other diagnosing tools, such as MRI's to identify the source of back pain.  Because it is an invasive procedure it is cautioned that it should only be used when all other methods have been exhausted.  *Provocative Discography: Current status, Biomedical Imaging and Intervention Journal*, received 1 June 2005; accepted 5 July 2005, produced by the Graduate Medical School, Singapore Health Services.  It was noted that there are "very few indications for thoracic discography and it is rarely performed . . . thoracic discography may demonstrate disc pathology that is not seen on MR imaging. *Id.* at pg. 3.

Plaintiff argues that in his 2008 article, Dr. Singh concluded the systematic review of thoracic discography as a diagnostic test for back pain should be given a weak recommendation primarily because there seemed to be insufficient evidence to conclude otherwise.  Furthermore, Plaintiff notes that the article indicated that the method had been used over the years and is considered to be superior to other imaging methods and it continues to be the standard to determine whether or not a particular disc is painful.  Dr. Vater's deposition testimony confirmed that Plaintiff's doctors used thoracic discography to help diagnosis the source of the pain as a piece of the puzzle, also relying on MRI and other things.  (*See* Dr. Vater's deposition, pg. 5 of Plaintiff's response.)  Plaintiff explains that there are few studies which have evaluated the effectiveness of thoracic discography because there are a small number or thoracic spine injuries and that although there does exist one article which questions the assistance of thoracic discography does not mean the procedure is flawed.

Defendant appears to be requesting a complete exclusion of all testimony regarding thoracic discography and does not address the fact that Plaintiff's witnesses appear to only be his treating physicians who used the procedure as part of their diagnosis

for treatment as opposed to being experts specifically retained or employed to provide post-litigation expert witness testimony. Defendant concludes that because thoracic discography has not been qualified as scientifically reliable, the only other basis that Plaintiff's treating physicians have to make their determination of what caused Plaintiff's injury is what Plaintiff told them. Therefore, because the doctors have not conducted a differential diagnosis or presented any other discernible science to explain their diagnosis, they should not be allowed to testify as to what caused Plaintiff's injury.

Nevada federal courts have held that "[s]ince a treating physician's opinion on matters such as 'causation, future treatment, extent of disability and the like' are part of the ordinary care of a patient, a treating physician may testify to such opinion." *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296 (D. Nev. 1998) (quoting *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 174-75 (D. Nev. 1997)). The court need not address whether a differential diagnosis is a scientifically reliable way for a treating physician to determine the cause of a patient's injury at this time but the court does notes that caution must be taken when allowing treating physicians to testify as to the cause of a patient's injury because some issues of causation do not lend themselves to certainties. *Morin v. U.S.*, 534 F.Supp.2d 1179, (D. Nev. 2005). *See Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir.1995) (permitting treating physician to render an opinion that combining alcohol with therapeutic doses of acetaminophen caused liver disease in light of "medical community's daily use of the same methodologies in diagnosing patients"); *Mason v. Texaco*, *Inc.*, 741 F.Supp. 1472, 1497 (D.Kan.1990), aff'd in part, 948 F.2d 1546 (10th Cir.1991), cert. denied, 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992) (certain issues of causation "do not lend themselves to the same certainties as do diseases such as asbestosis, whose cause is readily attributable to a particular agent or class of agents.. . . A medical degree or training does not confer any magical qualities upon those experts for

both plaintiff and defendant who testified on the causation issue."); *Sutera v. Perrier Group of America Inc.*, 986 F.Supp. 655, 667 (D.Mass.1997) (treating physician was oncologist and hematologist but lacked expertise to testify as to causal link between benzene and leukemia).  However, allowing Plaintiff's treating physicians to testify in this case regarding the diagnostic methods used to find the source of Plaintiff's back pain, does not present the same dilemmas of the above cited cases.

The Court finds that Defendant's motion to exclude all evidence and testimony of thoracic discography is overly broad.  Plaintiff is allowed to ask his treating physicians questions regarding the diagnostic tests they performed, the cause of Plaintiff's back pain and treatment, etc., as appropriate under Nevada law regardless of the method. *See Piper* 170 F.R.D. 173.  They are witnesses testifying as to the facts of their examination, diagnosis and treatment and their opinions about the cause of an injury or the extent of any remaining disability in this regard are a necessary part of the treatment of the patient. *Kirkland v. Union Pacific Railroad*, 189 F.R.D. 604 (D.Nev. 1999).  Plaintiff may ask his treating physicians to give their opinion, as a treating physician, as to whether this kind of injury was caused by being in a vehicle that was recently struck and rolled over. These opinions do not make them expert witnesses and Defendant will have an opportunity to question the weight to be given their use of such questionable diagnostic tests.

There is no evidence that Plaintiff intends to call these doctors to testify to anything more than what one would ordinarily expect a treating physician to testify. However, if those same treating physicians were specifically retained or employed to render a medical opinion based upon factors that were not learned in the course of the treatment for the patient, then that expert testimony would need to be submitted to the court for approval and recognition upon voir dire and the court would need to determine whether a sufficient basis for qualification of the witness as an expert exists and whether

the procedure is an admissible scientific theory pursuant to Rule 702. *Elgas*, 179 F.R.D. at 298.  As Plaintiff has not named any expert witnesses, the issues raised by Defendant regarding the admissibility of thoracic discography as a diagnostic tool are not relevant.

Under Nevada law, treating physicians are not considered retained experts. They should be allowed to testify as to treatment, diagnosis (including causation), and prognosis based upon their treatment of the patient and their medical training. Therefore, Plaintiff will be allowed to question his treating physicians in regards to how they determined the precise location of Plaintiff's back pain including any diagnostic tests they conducted.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion In Limine ECF No. 104 is DENIED.

DATED this 21st day of September, 2010.

_____
Gloria M. Navarro
United States District Judge